IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HYUN JU PARK, )<br><br>Plaintiff, )<br><br>vs. )<br><br>CITY AND COUNTY OF HONOLULU; )<br>ANSON KIMURA, STERLING NAKI; )<br>JOSHUA OMOSO; DOE )<br>ASSOCIATIONS 1-5; and JOHN )<br>and/or JANE DOES 1-10, )<br><br>Defendants. )<br>) | Civ. No. 17-00142 ACK-KSC |

## ORDER GRANTING DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

For the reasons set forth below, the Court GRANTS Defendant City and County of Honolulu's Motion to Dismiss the First Amended Complaint, ECF No. 98, to which Defendants Joshua Omoso and Sterling Naki have filed a Joinder, ECF Nos. 103, 104, as follows:

(1) As to Defendant City and County of Honolulu and Defendants Naki and Omoso, the Court GRANTS the Motion to Dismiss as to Counts 1-3 and 6. Counts 1-3 and 6 in regard to Defendant City and County of Honolulu and Defendants Naki and Omoso are DISMISSED WITHOUT PREJUDICE.

(2) As to Defendants Naki and Omoso, the Court GRANTS the Motion to Dismiss as to Plaintiff's official capacity

1

claims.  These claims are construed against the City and County of Honolulu and are DISMISSED against the officers in their official capacity WITH PREJUDICE. The Court notes that, as discussed in more detail herein, Counts 4 and 5 were dismissed pursuant to a stipulation, ECF No. 97, and no longer remain in this case.

## **PROCEDURAL BACKGROUND**

On March 30, 2017, Plaintiff Hyun Ju Park ("Plaintiff") filed a Complaint against the following entities and individuals: (1) City and County of Honolulu ("Honolulu"); (2) Honolulu Police Department ("HPD") officer Anson Kimura ("Kimura")[1] in his individual and official capacity; (3) HPD officer Sterling Naki ("Defendant Naki") in his individual and official capacity; (4) HPD officer Joshua Omoso ("Defendant Omoso") in his individual and official capacity (collectively with Kimura and Defendant Naki, the "individual officers"); and (5) John and/or Jane Does 1-10 and Doe Associations 1-5 (collectively with the John and Jane Does, the "Doe Defendants").  Complaint ¶¶ 8-11.

The Complaint asserted six causes of action.  Counts 1 through 3, arising under 42 U.S.C. § 1983, stated that

---

[1] On November 16, 2017, the parties stipulated to dismiss all claims against Kimura with prejudice, so he is no longer a defendant in this case.  ECF No. 97.

Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments. Id. ¶¶ 31-43. Counts 4 through 6 alleged claims of assault and battery; intentional infliction of emotional distress ("IIED"); and negligence. Id. ¶¶ 44-51.

On May 11, 2017, Defendant Honolulu filed a Motion to Dismiss Complaint Filed April 20, 2017 Pursuant to FRCP 12(b)(6) ("Motion"). ECF No. 14. On June 2, 2017, Dongbu Insurance Co. ("Intervenor Plaintiff" or "Dongbu") filed a Motion to Intervene to protect its subrogation rights as the lien holder for the worker's compensation benefits it provided Plaintiff and to assert claims against Defendants. ECF No. 25. On August 31, 2017, Magistrate Judge Kevin Chang granted the Motion to Intervene. ECF Nos. 52, 68. On September 11, 2017, both Plaintiff and Intervenor Plaintiff filed Oppositions to Defendant Honolulu's Motion to Dismiss ("Pl. Opp." and "Int. Pl. Opp."). ECF Nos. 60, 62. On September 18, 2017, Defendant Honolulu filed replies to these oppositions. ECF Nos. 71, 72.

On October 3, 2017, the Court entered an Order Granting in Part and Denying in Part Defendant City and County of Honolulu's Motion to Dismiss Complaint ("October 3, 2017 Order"). ECF No. 79. Specifically, in its October 3, 2017 Order, the Court held the following:

> (1) As to Defendants Kimura, Naki, and Omoso, the Court granted the Motion to Dismiss as to

3

Plaintiff's official capacity claims. The Court construed these claims against the City and County of Honolulu and dismissed them against the officers in their official capacity with prejudice.

(2) As to the Doe Defendants, the Court denied the Motion to Dismiss.

(3) As to Defendant City and County of Honolulu, the Court granted the Motion to Dismiss as to Counts 1-3 and 6 and dismissed these counts without prejudice.

On November 2, 2017, Plaintiff filed her First Amended Complaint ("FAC"). ECF No. 90. The FAC alleges claims against the same Defendants as the Complaint. The FAC also alleges the same claims as the Complaint, except Count 6's negligence claim also alleges a theory of negligent training and/or supervision.

On November 22, 2017, Defendant Honolulu filed a Motion to Dismiss the First Amended Complaint. ECF No. 98. On December 6, 2017, Defendants Omoso and Naki filed a Joinder to Defendant Honolulu's Motion to Dismiss. ECF Nos. 103, 104. On January 12, 2018, Plaintiff filed an Opposition to Defendant's Motion. ECF No. 120. On that same date, Plaintiff-Intervenor Dongbu filed a Joinder to Plaintiff's Opposition. ECF No. 122. On January 22, 2018, Defendant Honolulu filed a Reply to

Plaintiff's Opposition.  ECF No. 124.  The Court held a hearing

on Defendant's Motion on February 5, 2018.[2]

**FACTUAL BACKGROUND**

At approximately 1:45 a.m. on April 3, 2015, Plaintiff

was performing her duties as a bartender and manager at the

Kings Sports Bar in Honolulu, Hawaii.  FAC ¶ 12.  At that same

time and place, Kimura was drinking alcoholic beverages and

socializing with Defendants Naki and Omoso, among others, while

on "off-duty" status as HPD officers.  Id. ¶¶ 13-14.  Plaintiff

and other persons present at the Kings Sports Bar were aware

that Kimura, Naki, and Omoso were HPD officers.  Id. ¶ 15.

While Kimura was drinking, he took out his

supplemental firearm issued by the HPD and then handled the

weapon in a reckless and dangerous manner.  Id. ¶ 16.  One

bullet was discharged from Kimura's firearm and struck

Plaintiff.  Id.  The FAC alleges that Kimura purports to have

handled his weapon in order to reload what he believed to be an

unloaded firearm.  Id. ¶ 17.

Defendants Naki and Omoso were aware that Kimura was

_____

[2] The Court also notes that on December 22, 2017, Dongbu
filed a Complaint in Intervention.  ECF No. 110.  On January 11,
2018, Defendant Honolulu filed a Motion to Dismiss the
Complaint.  ECF No. 118.  Defendants Naki and Omoso have filed
Joinders to Defendant Honolulu's Motion.  ECF Nos. 127, 128.
The Court has scheduled a separate hearing on this motion to
dismiss for March 19, 2018.

handling his firearm in a reckless and dangerous manner prior to its discharge but failed to intervene.  Id. ¶ 21.  Pursuant to HPD Policy Number 2.21, entitled "Standards of Conduct," effective on the date of the incident, Defendants Naki and Omoso were required to take action as soon as they observed Kimura's reckless and dangerous handling of his firearm.  Id. ¶ 22.

Pursuant to HPD Policy Number 2.38, effective on the date of the incident, entitled "Uniforms, Equipment, and Firearms," police officers are required to possess their HPD issued firearm at all times but are prohibited from such possession when an officer's "physical and/or mental processes are impaired because of consumption or use of alcohol."  Id. ¶ 23.  The FAC further alleges that this policy was modified around January 6, 2016, after the date of the incident, to prohibit officers from physically handling HPD issued firearms while consuming alcohol or any other substance likely to impair their physical or mental processes.  Id. ¶ 24.

Plaintiff alleges that Policy Number 2.38, as it was effective on the date of the incident, was deficient as it permitted officers to possess firearms while consuming alcohol up to the point of intoxication, rather than expressly prohibiting the possession of a firearm while consuming alcohol in any amount.  Id. ¶ 25.  The individual officers were trained in accordance with Policy Number 2.21 and 2.38—the versions that

were in place on the date of the incident.  Id. ¶ 26.

Plaintiff alleges that there was a "brotherhood" culture of silence at the HPD, in which officers were known to abstain from reporting misconduct by their fellow officers, which was a de facto policy of the HPD.  Id. ¶¶ 29-30. Plaintiff alleges that this "brotherhood" culture was exhibited in many different ways.  See id. ¶¶ 31-39.

## STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

In resolving a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true.  Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012).  The complaint "must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

When the Court dismisses a complaint pursuant to Rule 12(b)(6) it should grant leave to amend unless the pleading cannot be cured by new factual allegations. OSU Student All. v. Ray, 699 F.3d 1053, 1079 (9th Cir. 2012).

## DISCUSSION

### I. Claims Against Individual Officers in their Official Capacity

The Court's October 3, 2017 Order dismissed Plaintiff's official capacity claims against the individual officers with prejudice. ECF No. 79. The Court held the following:

> Personal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. See Hafer v. Melo, 502 U.S. 21, 25 (1991). Official capacity suits, on the other hand, "generally represent only another way of pleading an action against an entity of which an officer is an agent."

8

> Monell v. N.Y.C. Dep't of Soc. Servs., 436
> U.S. 658, 690 n. 55 (1978).  Therefore,
> courts should treat such suits as suits
> against the governmental entity.  Kentucky
> v. Graham, 473 U.S. 159, 166 (1985); see
> Carnell v. Grimm, 872 F. Supp. 746, 752 (D.
> Haw. 1994) (dismissing claims against
> officials in their official capacity as
> duplicative where the municipality had also
> been sued).  Accordingly, the Court
> dismisses the claims against the individual
> officers in their official capacity with
> prejudice.

October 3, 2017 Order at 12.  The FAC still pursues official
capacity claims against the individual officers.  FAC ¶¶ 9-10.
In light of the Court's prior ruling, the Court again dismisses
official capacity claims against the individual officers with
prejudice.

## II.  Section 1983 Claims (Counts 1-3) Against Defendant Honolulu and Defendants Naki and Omoso

Section 1983 provides relief against "[e]very person
who, under color of any statute, ordinance, regulation, custom,
or usage, of any State . . . causes  . . . any citizen of the
United States . . . the deprivation of any rights, privileges,
or immunities secured by the Constitution."  42 U.S.C. § 1983.
Parties can seek relief under § 1983 against persons acting
under the color of state law.  West v. Atkins, 487 U.S. 42, 48
(1988).  "Persons" covers "state and local officials sued in
their individual capacities, private individuals and entities
which acted under color of state law, and local governmental

entities." <u>Vance v. Cty. of Santa Clara</u>, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996).

For an individual capacity suit under Section 1983, plaintiff must allege personal participation in the constitutional violation on the part of the individual to subject that person to individual liability. <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002). For a municipal liability suit, municipalities and their agents must cause the constitutional violation through a policy or custom. <u>Monell</u>, 436 U.S. at 694.

To establish a Section 1983 claim for municipal liability, the plaintiff must show: "(1) that [she] possessed a constitutional right of which [she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." <u>Oviatt v. Pearce</u>, 954 F.2d 1470, 1474 (9th Cir. 1992) (internal quotation marks omitted). In addition, as discussed in more detail in footnote 3, the government official generally must act under state law.

Defendant Honolulu argues that Plaintiff fails to plausibly allege that Defendants were acting under color of state law and each of these four requirements. The Court discusses each of these arguments in turn.

## a. Whether the FAC Plausibly Alleges that Defendants were Acting Under Color of State Law

Defendant Honolulu argues that the Court should

dismiss the FAC because Defendants did not act under the color

of state law.[3]

_____

[3] Plaintiff's only argument in her Opposition addressing this issue states in a footnote that with respect to claims against Defendant Honolulu, it does not matter whether the individual officers were acting under color of state law. Opposition at 11 n.5. Plaintiff discusses a case from the Seventh Circuit, Gibson v. City of Chicago, 910 F.2d 1510 (7th Cir. 1990), to support this assertion. Gibson states, "On a municipal liability claim, the City policy itself must cause the constitutional deprivation. Therefore, the municipality itself is the state actor and its action in maintaining the alleged policy at issue supplies the 'color of law' requirement under § 1983." 910 F.2d at 1519.

However, in general, the Ninth Circuit requires the employee to be acting under color of state law. See Van Ort v. Estate of Stanewich, 92 F.3d 831, 836 (9th Cir. 1996). The Ninth Circuit recognizes two exceptions to the general requirement that the employee must be acting under color of state law. In Van Ort, the Ninth Circuit held that "[o]nly under highly limited circumstances does the government have a duty to protect individuals from deprivations of constitutional rights by private individuals." Id. In such cases, government liability can only be found if there was a special relationship between the individual and the state actor, giving rise to a duty. Id. (citing DeShaney v. Winnebago Cy. Dep't of Social Serv., 489 U.S. 189, 196-200 (1989)); Gazette v. City of Pontiac, 41 F.3d 1061, 1065 (6th Cir. 1994)). Such special relationships arise from affirmative government acts, "like incarceration of criminals and institutionalization of the mentally ill." Van Ort, 92 F.3d at 836 (citing DeShaney, 489 U.S. at 198-200). Here, the Court finds that no such relationship existed between Defendant Honolulu and Plaintiff to warrant such a duty. In addition, the Ninth Circuit has held that state officials are liable for private violence where the state affirmatively places the plaintiff in a dangerous situation. Huffman v. Cty. of Los Angeles, 147 F.3d 1054, 1059 (9th Cir. 1998). The Court finds that Plaintiff has not alleged

(continued . . . )

The Ninth Circuit has held that there are "three critical requirements that must be satisfied" for conduct to be considered state action: (1) the acts complained of must have been "'performed' while the officer is acting, purporting, or pretending to act in the performance of his or her official duties"; (2) the "pretense of acting in the performance of his duties must have had the purpose and effect of influencing the behavior of others"; and (3) the acts complained of must be "related in some meaningful way either to the officer's governmental status or to the performance of his duties." Anderson v. Warner, 451 F.3d 1063, 1068-69 (9th Cir. 2006) (internal quotation marks and citation omitted); see Silva v. City & Cty. of Honolulu, Civ. No. 11-00561 LEK-RLP, 2013 WL 2420902, at *12 (D. Haw. May 31, 2013).  The Court finds that the FAC fails to plausibly allege that the individual officers acted under color of state law.

> ### i.    Whether the Acts Complained of Were Performed While the Officers were Acting, Purporting, or Pretending to Act in the Performance of Their Official Duties

The FAC does not allege that the individual officers were acting, purporting, or pretending to act in the performance

---

such affirmative actions in the FAC.  The Court further finds that even if the Court were to take into account the Gibson ruling, Plaintiff still fails to plausibly plead municipal liability under Monell for the reasons discussed herein.

of their official duties.  Rather, Plaintiff alleges that the individual officers were "off-duty" at the time of the incident, FAC ¶ 14, and that Kimura was drinking alcohol and socializing with Defendants Naki and Omoso, among others when he handled his HPD issued firearm.  Id. ¶ 13.  In fact, as regards to Kimura, Plaintiff specifically alleges that he acted "outside the scope of his employment as a police officer" with the HPD.  Id. ¶ 63.

In addition, the FAC does not contain any facts to support a claim that the individual officers were acting in performance of their official duties.  Plaintiff has not amended her complaint to allege that the individual officers were in uniform, carried official identification, or identified themselves as a member of law enforcement.  See Silva, 2013 WL 2420902, at *12 (addressing whether an off-duty police officer was acting pursuant to official authority and looking to, inter alia, whether the officer was wearing a uniform, displaying a badge, brandishing a weapon, identifying oneself as an officer, issuing commands, or intervening in a dispute).  Plaintiff alleges that Kimura was reloading his HPD firearm, which he believed to be unloaded.  FAC ¶ 17.  However, the FAC does not allege that his conduct was in performance of his official duties or provide sufficient indication that such conduct— reloading a firearm while drinking and off duty in a bar—was part of Kimura's official duties.  In regard to Defendants Naki

and Omoso, the FAC merely alleges that they were drinking alcohol and socializing with Kimura when he took out his gun and failed to take appropriate action to stop Kimura's conduct.  Id. ¶¶ 13, 21.  The FAC similarly does not contain any allegations to indicate that Defendants Naki and Omoso were acting in performance of their official duties.

### ii.  Whether the Officers' Pretense of Acting in the Performance of their Duties Must Have Had the Purpose and Effect of Influencing the Behavior of Others

The FAC does not allege any facts to support a claim that the individual officers acted with the purpose and effect of influencing others.  Instead, the FAC states that Kimura took out his HPD issued firearm in a reckless and dangerous manner leading to one bullet being discharged and striking Plaintiff. Id. ¶ 16.  The same allegations are absent with respect to Defendants Naki and Omoso.  The only new allegation in the FAC that touches on this issue states that Plaintiff was aware that the individual officers were police and that she "remained silent due to her fear and awe" of them.  Id. ¶ 18.  "The mere fact that [Plaintiff] knew that his attackers were police officers, however, does not mean that those officers acted under color of state law."  Lyons v. Adams, 257 F. Supp. 2d 1125, 1132 (N.D. Ill. 2003) (holding that there was no evidence that the incident in question involved the officers' performance of their

14

official duties because, _inter alia_, they did not wear police uniforms, did not identify themselves as police officers, and did not display their badges).  In addition, these allegations fail to address the requirement that the individual officers acted with the purpose and effect of influencing others.

### iii. Whether the Officers' Conduct was Related in Some "Meaningful" Way to Either the Officer's Governmental Status or to the Performance of His Duties

Third, as previously discussed, the FAC does not allege that the individual officers' conduct was related in some meaningful way to the individual officers' governmental status or to the performance of their duties.  The only relationship between Kimura's actions and his official duties was that he was carrying his unloaded HPD issued firearm and was attempting to reload it when the bullet fired.  This is insufficient on its own to plausibly allege that Kimura was acting under color of state law.  _See_ _Martinez v. Colon_, 54 F.3d 980, 987-88 (1st Cir. 1995) ("We do not think it is reasonable to hold that _every_ use of a policeman's gun, even in the course of purely personal pursuits, creates a cause of action under section 1983 . . . the context in which a service revolver is used . . . must be consulted to determine the constitutional relevance of the officer's conduct."); _Cook v. Morrow_, No. C06-04337 MJJ, 2007 WL 3022607, at *9 (N.D. Cal. Oct. 12, 2007) (holding that the

defendant police officer was not acting under color of state law
even though the defendant communicated that he was a member of
the police and wielded a gun issued by the police department
during the altercation).

Accordingly, because the Court finds that Plaintiff
has failed to adequately allege that the individual officers
acted under the color of state law, as well as the reasons
discussed herein, the Court dismisses Counts 1-3 as to the
Defendants without prejudice.

### b. Whether the Complaint Plausibly Alleges that Plaintiff Possessed a Constitutional Right of Which She was Deprived

#### i. Fourth Amendment Violation

Defendant argues that Plaintiff's Monell claims
predicated upon the Fourth Amendment are not plausible because
Plaintiff was not "seized." As the Court discussed in its
October 3, 2017 Order, a Fourth Amendment seizure does not occur
"whenever there is a governmentally caused termination of an
individual's freedom of movement . . . nor even whenever there
is a governmentally caused and governmentally desired
termination of an individual's freedom of movement (the fleeing
felon), but only when there is a governmental termination of
freedom of movement through means intentionally applied."
Brower v. Cty. of Inyo, 489 U.S. 593, 596-97 (1989) (emphasis in
original). "Violation of the Fourth Amendment requires an

intentional acquisition of physical control." Id. at 596.

Although the person or object of the detention or taking can be

unintended, "the detention or taking itself must be willful."

Id. The Brower court further elaborated on the meaning of

intent, stating:

> In determining whether the means that
> terminates the freedom of movement is the
> very means that the government intended we
> cannot draw too fine a line, or we will be
> driven to saying that one is not seized who
> has been stopped by the accidental discharge
> of a gun with which he was meant only to be
> bludgeoned, or by a bullet in the heart that
> was meant only for the leg.  We think it
> enough for a seizure that a person be
> stopped by the very instrumentality set in
> motion or put in place in order to achieve
> that result.

Id. at 598-99 (emphasis in original).

The Court finds that the FAC fails to remedy the

deficiencies the Court discussed in Plaintiff's original

Complaint.  The FAC merely alleges that Kimura took out his HPD

issued firearm, which he proceeded to handle in a reckless and

dangerous manner until one bullet was discharged, striking

Plaintiff.  FAC ¶ 16.  Although the Court notes that Counts 4

and 5 of the FAC contain allegations that Kimura acted

intentionally, the Court does not find these allegations of

intent sufficient to withstand a motion to dismiss because they

are conclusory.  Under the circumstances alleged in the FAC, the

Court again concludes that Plaintiff's allegation of

recklessness fails to plausibly allege a seizure under the

Fourth Amendment.  Plaintiff does not allege that Kimura

intended for the firearm to discharge a bullet let alone to

discharge a bullet at Plaintiff.[4]  Likewise, the FAC contains no

---

[4] Plaintiff again argues that reckless conduct may serve as
a basis for an unconstitutional seizure in violation of the
Fourth Amendment.  The Court's October 3, 2017 Order previously
discussed and rejected Plaintiff's argument as it applies to the
facts of this case.  October 3, 2017 Order at 21 n.10.  The
Order states:

> Plaintiff states that the Ninth Circuit has
> found that "reckless disregard" may serve as
> a basis for an unconstitutional seizure in
> violation of the Fourth Amendment in other
> contexts.  Plaintiff cites to <u>Galbraith v.
> Cty. of Santa Clara</u>, 307 F.3d 1119 (9th Cir.
> 2002) where the court held that plaintiff
> stated a plausible claim under the Fourth
> Amendment because he alleged that the police
> violated the Fourth Amendment for falsely
> arresting him where officials made
> deliberately false statements or recklessly
> disregarded the truth in a warrant affidavit
> on issues that were material to the finding
> of probable cause.  Because the facts in
> <u>Galbraith</u> relate to a different circumstance
> than the facts alleged here, the Court does
> not find it persuasive.

<u>Id.</u>
The Court finds no reason to depart from the law of the
case here.  A court may have discretion to depart from
the law of the case where: (1) the first decision was clearly
erroneous; (2) an intervening change in the law has occurred;
(3) the evidence on remand is substantially different; (4) other
changed circumstances exist; or (5) a manifest injustice would
otherwise result.  <u>United States v. Alexander</u>, 106 F.3d 874, 876
(9th Cir. 1997).  Failure to apply the law of the case doctrine
absent one of the requisite conditions constitutes an abuse of
discretion.  <u>Thomas v. Bible</u>, 983 F.2d 152, 155 (9th Cir. 1993).

(continued . . . )

18

allegations that Defendants Naki and Omoso displayed any conduct to limit Plaintiff's freedom of movement let alone intentional conduct to achieve that result.

In addition, the Court finds that no constitutional violation occurred because, as previously discussed, there was no government action; there was no governmentally caused termination of Plaintiff's freedom of movement. The individual officers' conduct, if any was alleged, was in their capacity as private citizens. See Van Ort, 92 F.3d at 835-37 ("Because Stanewich acted as a private citizen, the Van Orts had no constitutional right to be free from his deprivations of their constitutional rights."). Therefore, the Court dismisses Count 1 as to all Defendants without prejudice.

### ii. Fourteenth Amendment Violation

The right to be secure in one's person is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. McRorie v. Shimoda, 795 F.2d 780, 785 (9th Cir. 1986). The Fourteenth Amendment protects against the government's interference with an individual's bodily integrity. P.B. v. Koch, 96 F.3d 1298, 1303 (9th Cir. 1996). The threshold standard for judging a substantive due process claim is whether the challenged governmental action is "so egregious, so

The Court does not find that any of these conditions applies here and therefore again rejects Plaintiff's argument.

outrageous, that it may fairly be said to shock the contemporary conscience." Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998). As the Supreme Court has recognized, "the measure of what is conscience shocking is no calibrated yard stick . . ." Id. at 847. What shocks the conscience in one situation may not shock the conscience in another. See id. at 850.

"Historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 331-32 (1986) (emphasis in original). The Due Process Clause is not implicated by the lack of due care of an official causing unintended loss or injury to life, liberty, or property. Id. at 332-33. "The Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the states." Lewis, 523 at 848 (internal quotation marks and citation omitted). Rather, "it is . . . behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to a constitutional violation." Id. at 849.

The Supreme Court has stated that "[w]hether the point of the conscience shocking is reached when injuries are produced

with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence is a matter for closer calls" and depends on the facts and circumstances of each individual case.  Id. (internal citation and quotation marks omitted).  In Lewis, the Supreme Court addressed the issue of whether a police officer violates the Fourteenth Amendment's substantive due process guarantee by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender. Id. at 836.  The Supreme Court held that such conduct did not "give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983."  Id. at 854.  In that case, the complaint alleged that the police officers acted, inter alia, recklessly and carelessly.  Id.

     In Count 2 of the FAC, which is entitled "Fourteenth Amendment and/or 42 U.S.C. 1983 Violations," Plaintiff does not identify any specific conduct that violated her Fourteenth Amendment rights.  FAC ¶¶ 51-54.  Although Count 2 incorporates all of the preceding allegations, none of these allegations discuss an intentional act by any of the Defendants.  Rather, the allegations more closely resemble a tort claim and not a constitutional violation.  As previously discussed, Plaintiff only alleges that Kimura handled his HPD issued firearm in a

reckless manner.  Id. ¶ 16.[5]  With regard to Defendants Naki and

Omoso, Plaintiff alleges that they failed to intercede in

Kimura's actions.  Id. ¶ 21.  However, similarly, absent from

this allegation is any indication that Defendants Naki and Omoso

acted deliberately to deprive Plaintiff of her life, liberty, or

property.  Under the circumstances alleged in this case, the

Court finds that these allegations are insufficient to allege a

plausible violation of substantive due process under the

Fourteenth Amendment.

        In addition, the Court finds that no constitutional

violation occurred because, as previously discussed, there was

no governmental interference in Plaintiff's bodily movements.

The individual officers' conduct, if any was alleged, was in

their capacity as private citizens.  The Court, therefore,

dismisses Count 2 without prejudice as to all Defendants.

> ### c. Whether the Complaint Plausibly Alleges that the City and County of Honolulu Had a Policy, Practice, or Custom that Amounts to Deliberate Indifference to Plaintiff's Constitutional Rights that was the Moving Force Behind the Constitutional Violation

        A municipality is responsible for its officials'

unconstitutional conduct under Section 1983 only if the conduct

---

        [5] The Court notes that the FAC has conclusory allegations of
intent in another section, which, as previously discussed, the
court finds are insufficient to withstand a motion to dismiss.
See FAC ¶ 64 ("Defendant KIMURA intentionally, willfully . . .
assaulted and attacked Plaintiff . . .").

was caused by a municipal policy, practice, or custom.  <u>Menotti</u>
<u>v. City of Seattle</u>, 409 F.3d 1113, 1147 (9th Cir. 2005).  A
plaintiff may establish a municipal policy, practice, or custom
by, <u>inter alia</u>, proving that a city employee committed the
alleged constitutional violation pursuant to a formal government
policy or a longstanding practice or custom which constitutes
the standard operating procedure of the local government entity.
<u>Hooper v. City of Pasco</u>, 241 F.3d 1067, 1083 (9th Cir. 2001)
(quoting <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346-47 (9th Cir.
1992)) (internal quotation marks omitted).  A policy can be one
of action or inaction, such as a failure to train employees when
such omissions amount to the government's policy.  <u>Long v. Cty.</u>
<u>of Los Angeles</u>, 442 F.3d 1178, 1185-89 (9th Cir. 2006) ("[A]
county's lack of affirmative policies or procedures to guide
employees can amount to deliberate indifference."); <u>Bini v. City</u>
<u>of Vancouver</u>, 218 F. Supp. 3d 1196, 1201 (W.D. Wash. 2016).

        In addition to pleading the existence of a policy,
practice, or custom, Plaintiff must plead sufficient facts to
demonstrate that such policies amount to "deliberate
indifference" by Defendant Honolulu to the rights with whom it
comes into contact.  Deliberate indifference "is a stringent
standard of fault, requiring proof that a municipal actor
disregarded a known or obvious consequence of his action." <u>Bd.</u>
<u>of Cty. Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997).  Lastly,

Plaintiff must plead that the municipal policy or custom was the moving force behind the constitutional violation.  For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be closely related to the ultimate injury.  <u>Long</u>, 442 F.3d at 1190.  The plaintiff's burden is to establish that the injury would have been avoided had proper policies been implemented.[6]

---

[6] In <u>Huffman</u>, parents of a bar patron who was fatally shot during a brawl with an intoxicated off-duty sheriff's deputy brought suit against the county under Section 1983.  Similar to Plaintiff's arguments in this case, plaintiffs in <u>Huffman</u> argued that the County was liable under the "danger-creation theory" by demonstrating: (1) that the sheriff's department had a policy of requiring deputies to carry guns at all times while off duty; and (2) that the department failed to warn its deputies about the dangers of carrying firearms while intoxicated.  <u>Id.</u>  The plaintiffs further contended that the sheriff's department knew of eighty incidents from 1989 to 1994 in which off-duty deputies discharged or brandished firearms, fifteen of which involved the use of alcohol.  <u>Id.</u> at 1060.  According to plaintiffs, the department failed to take adequate steps in investigating these incidents or in disciplining the officers involved.  <u>Id.</u>

In <u>Huffman</u>, the Ninth Circuit, however, held that the county could not be held liable for the individual officer's private acts under Section 1983 because plaintiffs could not demonstrate that the state acted affirmatively, with deliberate indifference, in creating a foreseeable danger to plaintiff, leading to the deprivation of the constitutional rights of plaintiffs' son.  <u>Id.</u> at 1061.  The Ninth Circuit further held that the county could not have foreseen the deputy's private acts when it required him to carry a gun off duty; the deputy's private acts were unforeseeable and therefore broke the chain of proximate cause connecting action under color of law to the alleged constitutional violation.  <u>Id.</u> at 1059-60.  Given the similarities between the facts of the present case and the facts in <u>Huffman</u>, the Court finds <u>Huffman</u> persuasive here.

The Court further notes that in <u>Van Ort</u> the Ninth Circuit discusses traditional tort law, which defines intervening causes
(continued . . . )

Id.  Plaintiff's FAC pleads three main theories with regard to a

policy, practice, or custom.[7]  The Court discusses each of them

in turn.[8]

### i.   HPD Policy Number 2.38

The FAC alleges that HPD Policy Number 2.38, entitled

"Uniforms, Equipment, and Firearms," effective on the date of

the incident, "required off-duty officers to possess a pistol at

all times, but prohibited such possession when an officer's

---

that break the chain of proximate causation, and applies it to
Section 1983 actions.  Van Ort, 92 F.3d at 837.  Specifically,
the Ninth Circuit states that a policy is a proximate cause if
intervening actions are within the scope of the original risk
and therefore foreseeable.  See id. (citing Dodd v. City of
Norwich, 827 F.2d 1, 6 (2d Cir. 1987)).

[7] The Court notes that the FAC also discusses HPD Policy
2.21 but does not specifically plead municipal liability related
to that policy in Count 3.  Even if the FAC could be interpreted
to plead a municipal liability claim based on HPD Policy 2.21,
the Court finds that it cannot plausibly allege such liability
as a matter of law.  As alleged in the FAC, HPD Policy 2.21
required Defendants Naki and Omoso to take action when they
observed Kimura's handling of his firearm.  The FAC appears to
allege that Defendants Naki and Omoso violated Section 1983 by
failing to adhere to this policy.  Therefore, the policy, as
alleged in the FAC, cannot possibly be the moving force behind
the constitutional violation.

[8] Plaintiff claims that to withstand a motion to dismiss in
the Ninth Circuit with regard to municipal liability under
Section 1983, Plaintiff need not plead more than a bare
allegation that the individual officers' conduct conformed to an
official policy, practice, or custom.  Plaintiff cites to AE ex.
rel. Hernandez v. Cty. of Tulare, 666 F.3d 631 (9th Cir. 2012)
to support her contention.  However, Plaintiff only discusses
the beginning of Cty. of Tulare and fails to note that later in
the case, the Ninth Circuit held that the motion to dismiss
standard from the Supreme Court's landmark decisions in Twombly
and Iqbal also applies to a Monell claim.  See id. at 637.

'physical and/or mental processes are _impaired_ because of consumption or use of alcohol, medication, or any other substance which could impair a person's physical or mental processes . . .'" FAC ¶ 23 (emphasis in original). The Court, therefore, finds that Plaintiff has plausibly alleged a policy, practice, or custom based on HPD Policy Number 2.38 under the second prong of _Oviatt_ as previously discussed.

However, the Court finds that Plaintiff has failed to plausibly allege that HPD Policy Number 2.38 amounted to deliberate indifference of Plaintiff's constitutional rights. Plaintiff appears to argue that the HPD policy—permitting HPD officers to possess their firearm while consuming alcohol but only to the point when their physical and/or mental processes are impaired—amounted to deliberate indifference because some level of intoxication would likely occur from any consumption and was reasonably likely to cause death or bodily injury. Opposition at 12-13. Plaintiff cites to police policies in other jurisdictions prohibiting officers from carrying their firearm while consuming alcohol. Opposition at 13 n.6. Whatever the deficiencies HPD Policy Number 2.38 may have, the Court finds that the FAC fails to plausibly allege the "stringent standard" that the HPD "disregarded a known or obvious consequence" of Policy Number 2.38 that is actionable under Section 1983. _Brown_, 520 U.S. at 410.

With regards to whether HPD Policy Number 2.38 was the moving force behind the alleged constitutional violation, Plaintiff merely pleads that HPD "implemented a deficient policy that permitted officers to handle a firearm while consuming alcohol up to the point of intoxication, which was a policy reasonably likely to cause death or serious bodily injury."  FAC ¶ 57.  The Court finds this allegation conclusory and therefore insufficient to survive a motion to dismiss.[9]  Accordingly, the Court finds that Plaintiff has not adequately alleged that HPD Policy Number 2.38 was closely related to Plaintiff's injury to be the moving force behind the alleged constitutional violation.[10]

### ii.  HPD's "Brotherhood" Culture of Silence

Plaintiff has plausibly alleged a policy, practice, or custom based on HPD's "brotherhood" culture of silence under the second prong of Oviatt.  The FAC alleges that a "'brotherhood'

---

[9] Furthermore, the Court notes that the FAC does not allege whether or not Kimura was impaired at the time of incident.  If Kimura was not impaired, then the significance of HPD Policy Number 2.38 is not entirely clear.

[10] Defendant Honolulu states that HPD Policy Number 2.38 requires officers to possess their "pistol" at all times and does not mention a "revolver," as is alleged in the FAC, and states that therefore Kimura was not required to possess his revolver pursuant to HPD policy.  Reply at 8-9.  The Court finds Defendant Honolulu's distinction between a pistol and revolver to be immaterial.  Even if the Court were to find this distinction material, the Court dismisses the FAC for the reasons discussed herein.

culture of silence was prevalent among officers at the Honolulu Police Department, in which officers were known to abstain from reporting misconduct by their fellow officers, resulting in Defendant CITY AND COUNTY OF HONOLULU's failure to adequately discover and investigate instances of officer misconduct." FAC ¶ 29. The FAC then states that actions taken by HPD members immediately following the incident demonstrate this brotherhood culture of silence, including: (1) sequestering the individual officers from questioning during the investigation about the incident; (2) misclassifying the incident as a non-criminal matter; and (3) failing to administer a breathalyzer test upon Kimura. Id. ¶¶ 31-32. The FAC also alleges that the brotherhood culture of silence was evident in other incidents of HPD misconduct in 2009-2010, 2012, and 2014 and previous incidents where Kimura engaged in similar behavior at Kings Sports Bar. Id. ¶¶ 34-35.[11]

However, the Court finds that Plaintiff has failed to

---

[11] Defendant Honolulu appears to argue that these additional incidents are of no consequence because Plaintiff fails to allege that these events were similar to the incident in the present case. Motion at 20. The Court disagrees as it relates to the issue of whether Plaintiff has adequately alleged a policy, practice, or custom. As Plaintiff argues, "any factual disparities . . . are irrelevant to the point at issue . . . These cases demonstrate that the City was aware of various groups of officers (on multiple prior occasions) had felt that they were at liberty to engage in mutual misconduct without reporting their colleagues to their supervising officers . . ." Opposition at 16-17 n. 7.

plead non-conclusory allegations that the "brotherhood" culture
of silence amounted to deliberate indifference to Plaintiff's
constitutional rights.  Instead, the FAC alleges that Defendant
Honolulu's de facto policy of "concealing and condoning officer
misconduct . . . encouraged and emboldened [the individual
officers to] act with reckless disregard and/or deliberate
indifference to Plaintiff's constitutional rights."  Id. ¶ 59.
Defendant Honolulu was "deliberately indifferent to the de facto
'brotherhood' culture of silence existing within the Honolulu
Police Department."  Id. ¶ 60.  Neither of these allegations
address that, pursuant to Monell, the brotherhood culture of
silence itself amounted to deliberate indifference to
Plaintiff's constitutional rights.  The Court further finds
these allegations to be vague and conclusory and therefore
insufficient to survive a motion to dismiss.  See Iqbal, 556
U.S. at 678 ("[T]he tenet that a court must accept as true all
of the allegations contained in a complaint is inapplicable to
legal conclusions . . . Threadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do not
suffice.").

        The Court finds the same with regard to Plaintiff's
allegations about the "brotherhood" culture of silence.
Plaintiff merely alleges that the "brotherhood" culture of
silence was "the moving force behind the deprivation of

Plaintiff's constitutional rights." FAC ¶ 59. The Court finds this allegation to be conclusory and therefore insufficient to survive a motion to dismiss. In addition, the Court finds that as currently pled in the FAC, the connection between the "brotherhood" culture of silence and Plaintiff's injury are too tenuous for the culture to constitute a moving force behind the injury.[12]

### iii. Failure to Train

Plaintiff also alleges that the individual officers were not adequately trained. To allege Section 1983 municipal liability based on a failure to train, Plaintiff must claim that: (1) the existing training program is inadequate in

---

[12] Plaintiff discusses <u>LaPorta v. City of Chicago</u>, 102 F. Supp. 3d 1014 (N.D. Ill. 2015), where the court held that the plaintiff adequately alleged that the Chicago Police Department's practices—concealing officer misconduct, applying lenient standards to complaints against off-duty officers, failing to maintain accurate records of officer misconduct, hiring and retaining unqualified officers, and permitting a "code of silence" within the Chicago Police Department—was the moving force behind the constitutional violation. <u>Id.</u> at 1021-22.

However, the Court finds this case distinguishable. In <u>LaPorta</u>, plaintiff also alleged facts supporting a connection between the City's policy of condoning officer misconduct and the constitutional injury, including the fact that fifteen complaints had been filed against the officer at issue alleging excessive force and other misconduct. <u>Id.</u> at 1021. In addition, plaintiff alleged that after the incident, the officer was belligerent and very irate and began swinging his arms at the responding officers. <u>Id.</u> Here, however, allegations such as these are absent from the FAC. Moreover, the Court is not bound to follow the <u>LaPorta</u> decision.

relation to the tasks the particular officers must perform; (2) the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact; and (3) the inadequacy of the training actually caused the deprivation of the alleged constitutional right. Merritt v. Cty. of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011). "[T]he need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that policymakers . . . can reasonably be said to have been deliberately indifferent to the need." City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989).

    "Under this standard, [Plaintiff] must allege facts to show that the [Defendant] disregarded the known or obvious consequence that a particular omission in their training program would cause [municipal] employees to violate citizens' constitutional rights." Flores v. Cty. of Los Angeles, 758 F.3d 1154, 1159 (9th Cir. 2014) (emphasis added) (internal quotation marks and citation omitted). "Absent allegations of specific shortcomings in the training . . . or facts that might place the City on notice that constitutional deprivations were likely to occur, Plaintiff [cannot] adequately [plead] a § 1983 claim . .

. for failure to train." Bini, 218 F. Supp. 3d at 1203.

The first issue is whether Plaintiff has adequately alleged that the HPD's existing training program is inadequate in relation to the tasks the particular officers must perform. Plaintiff alleges that Defendant Honolulu "failed to adequately train Defendant KIMURA in the usage and handling of revolvers, as the Honolulu Police Department did not provide officers with specific training courses tailored to the usage and handling of revolvers during officers' annual recall training, while nevertheless permitting officers to use revolvers as their supplemental firearms." FAC ¶ 20.

The Court finds that this allegation fails to plausibly allege that the training regarding the officers' use of HPD's supplemental firearms was inadequate. The fact that the HPD failed to provide specific training courses tailored to the usage and handling of revolvers during annual recall training is insufficient on its own to state a plausible claim that HPD's existing training program is inadequate. The HPD could have given other training at another time during the year or when the officers initially were given their service weapons. Plaintiff's allegations regarding the need for more or different training are not "so obvious." See Canton, 489 U.S. at 390.

The FAC further alleges that Defendant Honolulu "failed to adequately train . . . Defendant KIMURA in the

handling of his . . . revolver while on 'off-duty' status, and that said lack of adequate training was reasonably likely to cause death or serious bodily injury." FAC ¶ 56. The FAC also alleges a failure to train theory in regard to Defendants Naki and Omoso's conduct. Specifically, the FAC states, Defendant Honolulu "failed to adequately train . . . Defendants NAKI, OMOSO, and DOE DEFENDANTS to take appropriate action to intercede against and/or report Defendant KIMURA's instances of firearm mishandling." Id. ¶ 58. The Court finds both of these allegations to be vague and conclusory and therefore insufficient to survive a motion to dismiss. See Iqbal, 556 U.S. at 678.

The second issue is whether Plaintiff has adequately alleged that Defendant Honolulu's failure to train amounts to deliberate indifference to her constitutional rights. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." Canton, 489 U.S. at 389; see also Pembaur v. City of Cincinatti, 475 U.S. 469, 483 (1986) (holding that municipal liability attaches where a deliberate choice to follow a course of action is made from various alternatives by the relevant officials). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to

demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 62 (2011) (quoting Bd. of Cty. Com'rs v. Brown, 520 U.S. 397, 409 (1997)). However, a "plaintiff also might succeed in proving a failure-to-train claim without showing a pattern of constitutional violations where a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Long, 442 F.3d at 1186 (internal quotation marks and citation omitted).

The FAC is devoid of any claims that Defendant Honolulu's policy not to train officers in regard to their supplemental firearm at the HPD's annual recall training amounted to deliberate indifference. There are no allegations that HPD's training was a deliberate choice or that there was a pattern of similar violations. Nor are there any allegations that the individual officers' actions were a highly predictable consequence of any alleged lack of training. The Court, therefore, finds that Plaintiff has failed to adequately allege the second element of Section 1983 municipal liability based on a failure to train.

The Court further finds that Plaintiff has not adequately alleged that any inadequate training actually caused the deprivation of Plaintiff's constitutional rights. There are

no non-conclusory allegations on this issue in the FAC.  The
Court, therefore, finds that Plaintiff has failed to adequately
allege a <u>Monell</u> claim based on a failure to train.

In sum, the Court finds that Plaintiff has failed to
plausibly allege a <u>Monell</u> claim based on any of the
aforementioned policies, practices, or customs.

### III. Plaintiff's State Law Claims

#### a. Assault and Battery (Count 4) and IIED (Count 5)

The FAC only states a claim for assault and battery
and IIED against Kimura and not Defendant Honolulu or Defendants
Naki and Omoso.  FAC ¶¶ 62-65.  All of the claims against Kimura
were dismissed on November 16, 2017, pursuant to a settlement
agreement.  <u>See</u> ECF No. 97.  Therefore, Counts 4 and 5 no longer
remain in this case.

#### b. Negligence (Count 6)

The FAC's negligence count is entitled "Negligence
Claims: General Negligence, Negligent Training and/or
Supervision, Respondeat Superior."  It incorporates the
preceding allegations and states, "Defendants KIMURA, NAKI,
OMOSO, DOE DEFENDANTS, and CITY AND COUNTY OF HONOLULU acted
herein negligently thereby proximately and directly causing
Plaintiff to suffer serious physical injuries, pain, mental
anguish . . ."  FAC ¶ 69.

### i. Negligence Claims Against Defendants Naki and Omoso

To establish a negligence claim under Hawaii law, Plaintiff must show: "(1) [Defendant's] duty to conform to a certain standard of conduct, (2) breach of the duty, (3) causal connection between the breach and the injury, and (4) damage to [Plaintiff]." Pourny v. Maui Police Dep't, Cty. of Maui, 127 F. Supp. 2d 1129, 1145 (D. Haw. 2000) (internal quotation marks and citation omitted).

The FAC alleges that Defendants Naki and Omoso were socializing with Kimura at the Kings Sports Bar when Kimura recklessly handled his HPD issued firearm. FAC ¶¶ 13-16. The FAC further states that Defendants Naki and Omoso failed to take appropriate actions to intercede in Kimura's conduct. Id. ¶ 21. The Court finds that these allegations fail to state a plausible negligence claim because they do not adequately allege any of the requisite elements. The FAC does not allege that Defendants Naki and Omoso had a duty to Plaintiff that they breached.[13]

_____

[13] "The general rule is that a person does not have a duty to act affirmatively to protect another person from harm. 'The fact that the actor realizes or should realize that action on his [or her] part is necessary for another's aid or protection does not of itself impose upon him [or her] a duty to take such action.'" Lee v. Corregedore, 83 Haw. 154, 159, 925 P.2d 324, 329 (1996) (quoting Restatement (Second) of Torts § 314 (1965)) (alterations in original).

Plaintiff has not alleged that Defendants Naki and Omoso had a legal duty to take affirmative action to stop Kimura's

(continued . . . )

Further, the FAC does not claim that any alleged breach by Defendants Naki and Omoso caused Plaintiff's injuries. The Court therefore dismisses the negligence claim against Defendants Naki and Omoso without prejudice.

### ii. Negligence Claims Against Defendant Honolulu

Defendant Honolulu argues that Count 6 should be dismissed for the following reasons: (1) the claims alleged are insufficient to support a direct negligence claim against the Defendant Honolulu; and (2) Defendant Honolulu is not vicariously liable for the conduct of Defendants Kimura, Naki, and Omoso. The Court discusses each of these arguments in turn.

### 1. Whether Plaintiff Adequately Alleges a Direct Negligence Claim

The FAC alleges a direct negligence claim against Defendant Honolulu on the basis of negligent supervision or training. "Under Hawaii law, before a plaintiff can establish a claim for negligent training and/or supervision, the plaintiff

---

conduct or plead any facts to show that such duty exists. Plaintiff only alleges that pursuant to HPD Policy Number 2.21, Defendants Naki and Omoso were required to take action as soon as they observed Kimura's conduct. FAC ¶ 22. However, HPD policies do not necessarily create a duty. See Dowkin v. Honolulu Police Dep't, No. CIV. 10-00087 SOM, 2012 WL 3012643, at *4 (D. Haw. July 23, 2012) (finding that the HPD's Code of Conduct did not by itself create a legal duty); Cox v. City of Ft. Worth, Tex., 762 F. Supp. 2d 926, 941 (N.D. Tex. 2010) ("A company's internal policies or procedures will not create a negligence duty where none otherwise exists." (quoting Cleveland Reg'l Med. Ctr., L.P. v. Celtic Props., L.C., 323 S.W.3d 322, 351 (Tex. App. 2010)).

must establish that 'the employer knew or should have known of the necessity and opportunity for exercising such control.'" Otani v. City & Cty. of Haw., 126 F. Supp. 2d 1299, 1308 (D. Haw. 1998), aff'd sub nom. Otani v. Hawai'i Cty. Police Dep't, 246 F.3d 675 (9th Cir. 2000) (quoting Abraham v. S.E. Onorato Garages, 50 Haw. 628, 639, 446 P.2d 821, 826 (1968)). The key to a negligent training and/or supervision claim is foreseeability. Id. "If an employer has not been put on notice of the necessity for exercising a greater degree of control or supervision over a particular employee, the employer cannot be held liable as a matter of law." Id.[14]

Here, the only allegation that suggests that the HPD had been put on notice of any alleged deficiencies in their training and supervision relates to the "brotherhood" culture of silence. Plaintiff alleges that Defendant Honolulu had

_____

[14] Although, as previously discussed, Hawaii courts require plaintiff to establish foreseeability for a negligent training claim, the Court notes that Hawaii law has not yet clearly established the elements of a negligent training claim. Dowkin v. Honolulu Police Dep't, Civ. No. 10-00087 SOM, 2012 WL 3012643, at *3 (D. Haw. July 23, 2012). At least one court in this district has followed California law, which requires a plaintiff seeking relief on a negligent training cause of action to allege that (1) the employer negligently trained the employee regarding the performance of his job duties, (2) which led the employee, in the course of executing his job duties, (3) to cause an injury or damages to the plaintiff. See Ryder v. Booth, Civ. No. 16-00065 HG-KSC, 2016 WL 2745809, at *11-12 (D. Haw. May 11, 2016) (citing Garcia ex rel. Marin v. Clovis Unified Sch. Dist., 627 F. Supp. 2d 1187, 1208 (E.D. Cal. 2009)).

knowledge of prior instances of HPD officers' attempts to
conceal misconduct and criminal wrongdoing.  See FAC ¶ 36.
However, the Court finds that it is not clear whether this
allegation relates to any alleged failure to train or supervise.
In addition, although Plaintiff alleges that Kimura handled his
firearm in the Kings Sports Bar previously, FAC ¶ 34, Plaintiff
does not state that his HPD supervisors became aware or explain
how or why HPD supervisors should have been aware of this
history.

The Court further notes that the FAC does not
sufficiently allege that a deficiency in Defendant Honolulu's
training and/or supervision was the legal cause of Plaintiff's
injuries.  Plaintiff's allegation related to causation is
conclusory and therefore insufficient to survive a motion to
dismiss.  See FAC ¶ 69 ("Defendants . . . acted herein
negligently, and thereby proximately and directly causing
Plaintiff to suffer serious physical injuries . . .").
Accordingly, the Court finds that Plaintiff fails to plausibly
allege a direct negligence claim against Defendant Honolulu for
negligent supervision and/or training and dismisses this claim
without prejudice.

### 2. Whether Plaintiff Adequately Alleges a Negligence Claim Based on Respondeat Superior

Defendant Honolulu argues that the negligence count

against it should be dismissed because it is not liable for the individual officers' actions under respondeat superior.

The Hawaii Supreme Court has adopted the test from the Restatement (Second) Agency § 228 to determine whether an individual is acting within the scope of his employment. Henderson v. Prof'l Coatings Corp., 72 Haw. 387, 392, 819 P.2d 84, 88 (1991). This test states that an employee's conduct is within the scope of employment if: "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master." Id. "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Id.

The Court finds that the allegations in the FAC fail to plausibly allege that Kimura was acting under the scope of his employment when he was handling his firearm. First, the Complaint fails to plausibly allege that Kimura's conduct was the kind he was employed to perform. Here, Kimura's alleged conduct—handling his HPD firearm to reload what he believed to be an unloaded firearm while off-duty drinking and socializing in a bar—is not of the kind Kimura was employed to perform as a police officer. FAC ¶¶ 16-17.

Plaintiff argues that Kimura's action—reloading his firearm—was of the type of conduct he was required to perform under the scope of his employment with the HPD. Opposition at 20. Plaintiff states that because Kimura's firearm must be loaded in order to effectuate the purpose of HPD's policy requiring officers to carry their firearm at all times, Kimura's attempt to reload his firearm was within the scope of his employment with the HPD. The Court does not find Plaintiff's argument persuasive. Plaintiff's argument fails to take into account the context of Kimura's actions—that he was off-duty drinking and socializing in a bar when he attempted to reload his firearm. The HPD did not employ Kimura to engage in such conduct.

Second, Plaintiff has not plausibly alleged that Kimura's conduct occurred within authorized time and space limits. Specifically, Hawaii courts look at whether the conduct at issue occurred within authorized work hours and while the individual was on duty at a place he was required to be. See State v. Hoshijo ex rel. White, 102 Haw. 307, 320, 76 P.3d 550, 563 (2003); Henderson, 72 Haw. at 394, 819 P.2d at 89. Here, Plaintiff has not alleged that the individual officers were on duty and in the bar for work purposes. Rather, Plaintiff alleges that they were drinking and socializing at a bar at approximately 1:45 a.m.

Third, the FAC does not claim that the individual officers were acting, at least in part, to serve the HPD. Rather, the allegations in the FAC—that the individual officers were drinking and socializing while off-duty in a bar when Kimura took out his HPD firearm unrelated to any specific law enforcement duty—reflect just the opposite. The Court, therefore, finds that Plaintiff has failed to adequately allege a negligence claim against Defendant Honolulu based on respondeat superior.[15]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant City and County of Honolulu's Motion to Dismiss the First Amended Complaint, ECF No. 98, to which Defendants Joshua Omoso and Sterling Naki have filed a Joinder, ECF Nos. 103, 104, as follows:

---

[15] Defendant Honolulu also argues that in order for Plaintiff to plausibly allege that Defendant Honolulu is liable for the alleged negligent acts of the individual officers, Plaintiff was required to plead that the individual officers acted maliciously. However, the Court finds that this argument misreads Hawaii law. Municipalities can be liable on the basis of respondeat superior for intentional and negligent torts committed by employees within the scope of their employment. Freeland v. Cty. of Maui, Civ. No. 11-00617 ACK-KS, 2013 WL 6528831, at *25 (D. Haw. Dec. 11, 2013); Dawkins v. City of Honolulu, 761 F. Supp. 2d 1080, 1094 (D. Haw. 2010). The cases that Defendant Honolulu cites discuss the malice requirement in the context of intentional tort claims or qualified immunity, whereas the claims at issue here are based on negligence and therefore do not require intent.

(1)  As to Defendant City and County of Honolulu and
     Defendants Naki and Omoso, the Court GRANTS the Motion
     to Dismiss as to Counts 1-3 and 6.  Counts 1-3 and 6
     in regard to Defendant City and County of Honolulu and
     Defendants Naki and Omoso are DISMISSED WITHOUT
     PREJUDICE.

(2)  As to Defendants Naki and Omoso, the Court GRANTS the
     Motion to Dismiss as to Plaintiff's official capacity
     claims.  These claims are construed against the City
     and County of Honolulu and are DISMISSED against the
     officers in their official capacity WITH PREJUDICE.

The Court notes that, as discussed in more detail herein, Counts
4 and 5 were dismissed pursuant to a stipulation, ECF No. 97,
and no longer remain in this case.

     Plaintiff must file an amended complaint within thirty
days of the entry of this Order or else judgment will be entered
against her.  Any amended complaint must correct the
deficiencies noted in this Order or Plaintiff's claims will
likely be dismissed with prejudice.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 12, 2018.



_____
Alan C. Kay
Sr. United States District Judge

Park v. City and County of Honolulu, et al., Civ. No. 17-00142 ACK-KSC, Order Granting Defendant City and County of Honolulu's Motion to Dismiss the First Amended Complaint